IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID ANTHONY HARRIS,                )
                                     )
                    Petitioner,      )
                                     )
        v.                           )        1:22CV652
                                     )
MICHAEL HARDEE,                      )
                                     )
                    Respondent.      )

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner David Anthony Harris, a prisoner of the State of North Carolina, filed a Petition [Doc. #1] seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court ordered an answer from Respondent, who filed a Motion to Dismiss [Doc. #12] based on the fact that Petitioner had not exhausted state court remedies as to all of the claims for relief raised in his Petition. After Petitioner notified the Court that he had later exhausted his state court remedies, the Court struck the Motion to Dismiss and ordered a further response from the State. The State then filed a Motion for Summary Judgment [Doc. #38]. Petitioner filed a Response [Doc. #43], Memorandum [Doc. #44], and Declaration [Doc. #45] in response. Respondent's Motion for Summary Judgment is now before the Court.

Case History

On July 19, 2019, in the Superior Court of Durham County, North Carolina, Petitioner was convicted by a jury of trafficking heroin by possession, possession with intent to sell or deliver cocaine, possession of drug paraphernalia, and maintaining a dwelling for the purpose of keeping or selling heroin and cocaine. He separately pled guilty to a charge of cruelty to

1

animals.  State v. Harris, No. COA20-735, 2021 WL 2794570 (N.C. App. July 6, 2021) (unpublished).  He then received sentences of 90 to 120 months for the trafficking conviction and a concurrent sentence of 10 to 21 months for the other offenses.  Petitioner filed a direct appeal, but the North Carolina Court of Appeals affirmed his conviction.

Separate from his direct appeal, Petitioner began a lengthy series of filings in the state courts which overlapped with both his direct appeal and the filing of his Petition in this Court. Specifically, in the trial court, he filed a Motion for Appropriate Relief (MAR) [Doc. #13-13], a Motion to Amend [Doc. #13-14] the MAR, a Second MAR [Doc. #13-16], a Motion to Amend the Second MAR [Doc. #13-20], a Motion to Vacate and Supplemental MAR [Doc. #13-25], and a Third MAR [Doc. #13-37].  All of his claims were denied.  He also filed a similar array of unsuccessful attempts at receiving collateral relief or appealing denials of his MARs with the North Carolina appellate courts, all without success.  [Doc. #13-16, -19, -21, -27, -29, -33, and -35.]

Facts

The facts of the case, as set out on direct review by the North Carolina Court of Appeals are as follows:

I. Background

¶ 2 Durham County Sheriff's deputies Pinner and Valdivieso independently executed two search warrants on 9 February 2017 at 409 East End Avenue, Durham, North Carolina, a house owned by Defendant. The first warrant was issued to Sergeant Wendy Pinner at 10:55 a.m. that day. She sought to seize a pit bull dog named "Big Girl." The affidavit asserted Sergeant Pinner had received a call the previous day regarding activity at 409 East End Avenue. Upon arrival, she observed a pit bull suffering from multiple injuries. Defendant told Sergeant Pinner neighborhood dogs had attacked "Big Girl," but he had refused to obtain veterinary care. Based upon her evaluation of the scene,

2

Sergeant Pinner believed there was probable cause to believe cruelty to animals was occurring at that address.

¶ 3 Later that day, Detective Charli Valdivieso obtained a search warrant for suspected drug offenses. In the affidavit for the warrant, Detective Valdivieso explained a confidential informant ("CI") had contacted him around 5 February 2017. The CI described an individual named "Dave," his residence, and the motor vehicle he drove. The CI alleged that "Dave" had sold narcotics. Detective Valdivieso procured a photo of Defendant as a possible picture of "Dave," and the CI confirmed his identity.

¶ 4 During that week, Detective Valdivieso arranged a controlled purchase from Defendant, using the CI. Detective Valdivieso and Lieutenant John Pinner had the CI contact Defendant and arrange a meeting with him. Defendant was observed leaving 409 East End Avenue and meeting the CI at a predetermined location. Defendant sold crack cocaine to the CI.

¶ 5 Deputy Bradley Grabarek was the surveillance officer located at 409 East End Avenue. He alerted Detective Valdivieso when Defendant left the house for the controlled sale and purchase. Grabarek had served in the Durham County Sheriff's Office for nine years since 2008.

¶ 6 Officers executed the search warrant for 409 East End Avenue on 9 February 2017. Officers found 12.1 grams of cocaine, 8.5 grams of cocaine base, and 18.31 grams of heroin. Also recovered was over $3,600 in U.S. currency, drug paraphernalia, a digital scale, and drug packaging materials. During the search, Defendant told Detective Valdivieso that he was the only person who lived there. A bill from Duke University Hospital, with Defendant's name and the address of 409 East End Avenue, Durham, NC, and a credit card, with Defendant's name on it, were also found therein.

¶ 7 In 2018, Deputy Grabarek became the subject of a Federal Bureau of Investigation ("FBI") inquiry. The FBI determined Grabarek was addicted to drugs and had used stolen evidence and illegal narcotics evidence purchase money to fuel his addiction. In 2019, Grabarek pled guilty to a single count of theft of government property. A federal court judge placed Grabarek on three years of probation and authorized a restitution payment plan totaling $15,300.

A. Defendant's Pre-Trial Motions

¶ 8 Defendant was indicted by a grand jury on 5 June 2017. Defendant was represented by private counsel, Ralph Frasier, who filed motions to suppress both warrants executed on 9 February 2017. The motions alleged each warrant

3

was too vague and invalid on its face. The trial court calendared the suppression motions to be heard on 15 July 2019.

¶ 9 At the pretrial hearing, Frasier argued he had just learned of Grabarek's involvement in the case as the surveillance officer. Frasier asserted that he could not subpoena Grabarek to appear in state court, as Grabarek was in federal custody, and was unable to cross-examine him.

¶ 10 The prosecutor informed and corrected Frasier that Grabarek was not in federal custody and the burden of the motion rested on defense counsel to show. During the hearing, the prosecutor explicitly informed Frasier of "a Franks motion to contest the truthfulness of what was alleged."

¶ 11 The trial court concluded the warrant application was facially sufficient to establish probable cause and denied the motions to suppress. The trial court's written order noted that there was "no reason to doubt the truthfulness of the testimony provided to the magistrate."

### B. Defendant's Trial and Sentencing

¶ 12 At trial, the State presented testimony from Detective Valdivieso regarding his contact with the CI and his search of the residence. Sergeant Pinner testified about her interactions with Defendant during her inspection of 409 East End Avenue for animal cruelty. The State also presented the Duke University Hospital medical bill as well as transcripts of text messages sent from a cell phone number associated with Defendant.

¶ 13 Defendant presented evidence from Defendant's sister who claimed he lived with her and that 409 East End Avenue, Durham North Carolina was rented to Michael Leverette. Leverette, who is serving a 264-month sentence in federal prison, submitted an affidavit averring that he had rented the home and the drugs recovered therein belonged to him.

¶ 14 The State's rebuttal evidence included testimony from Sergeant Justin Ellerbe, a detention intelligence officer, who had overheard a prison conversation between Leverette and another prisoner. Sergeant Ellerbe overheard Leverette claim he was going to "take" Defendant's charges, as his federal sentence would purportedly protect him from State charges.

¶ 15 The jury convicted Defendant on all four counts on 19 July 2019. Defendant received an active sentence of 90 to 120 months for the trafficking charge, and an active concurrent sentence of 10 to 25 months for the other three offenses.

Case 1:22-cv-00652-WO-JEP   Document 50   Filed 08/05/24   Page 4 of 31

<u>Harris</u>, 2021 WL 2794570, at *1-2.

Petitioner's Claims

Petitioner raised twenty claims for relief in his Petition, but later dismissed the twentieth claim, leaving only nineteen claims at this point. He alleges first that the trial court lacked jurisdiction over him because the indictment against him failed to properly classify the controlled substance involved in Count Two of the indictment because it referred to cocaine as a Schedule I substance rather than a Schedule II substance. (Petition, § 12, Ground One.) Second, Petitioner contends that the trial court did not have jurisdiction over him because Count Seven of the indictment charged him with possession of certain types of drug paraphernalia (plastic bags and a digital scale), but the evidence at trial also included other types of paraphernalia. (<u>Id.</u> Ground Two.) Third, Petitioner contends that the trial court lacked jurisdiction over him because it improperly allowed the State to present a video of him selling drugs fourteen months after the events charged in the indictment. (<u>Id.</u> Ground Three.) Petitioner's fourth claim alleges that the trial court did not have jurisdiction because law enforcement did not have probable cause to search 409 East End Avenue. He bases this allegation on alleged defects with the warrant obtained for the search. (<u>Id.</u> Ground Four.) Next, Petitioner begins claims of ineffective assistance of counsel by alleging that his trial attorney failed to request a hearing to examine Deputy Grabarek concerning his role in investigating Petitioner. (<u>Id.</u> Ground Five.) Ground six alleges ineffective assistance based on an allegation that counsel failed to subpoena Deputy Grabarek for Petitioner's pretrial suppression hearing. (<u>Id.</u> Ground Six). Petitioner's seventh claim faults counsel for failing to challenge the indictment with respect to the alleged improper classification of the controlled

5

substances in Count Two that is asserted in the first claim of the Petition. (Id. Ground Seven.) His eighth claim alleges that counsel failed to have a sleeping juror replaced with an alternate juror. (Id. Ground Eight.) The ninth claim in the Petition asserts that counsel was ineffective for failing to object to the variance between the indictment and the evidence at trial regarding the drug paraphernalia listed in Count Seven. (Id. Ground Nine.) Next, the tenth claim contends that Petitioner wanted to testify but that counsel prevented him from testifying, thereby violating Petitioner's right to testify. (Id. Ground Ten.) Petitioner alleges in his eleventh claim that his attorney provided ineffective assistance during his trial by failing to present rebuttal testimony and by failing to object to a hearsay statement made by a witness or to object to jury instructions regarding that statement. (Id. Ground Eleven.) He further contends in his twelfth claim that his attorney also improperly failed to object to the prosecutor accusing defense counsel of telling a witness what to say and failed to object to the prosecutor engaging in misconduct during the closing arguments. (Id. Ground Twelve.) Petitioner's next four claims for relief allege ineffective assistance of counsel by his appellate attorney. Specifically, he claims that his attorney improperly failed to raise (1) the issues related to the indictment, (2) an insufficiency of the evidence claim, (3) the prejudicial nature of the video of Petitioner selling drugs fourteen months after the actions for which he was convicted, and (4) alleged prosecutorial misconduct. (Id. Grounds Thirteen to Sixteen.) Petitioner's final three claims allege that trial counsel provided ineffective assistance by failing to (1) object to the removal of a potential juror because of his religious beliefs, (2) subpoena Petitioner's prior attorney as a witness, or (3) inform the trial court that Petitioner was not informed of his rights after he was detained in handcuffs at the 409 East End Avenue property but prior to stating

6

in response to police questioning that he was the only person that lived there. (Id. Grounds Seventeen to Nineteen.)

Standards of Review

As set out below, the Court does not have jurisdiction to review certain of Petitioner's claims for relief. However, as to the claims it does have jurisdiction to review, under AEDPA the Court must apply a highly deferential standard of review in connection with habeas claims "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). More specifically, the Court may not grant relief unless a state court decision on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. A state court decision is "contrary to" United States Supreme Court precedent if the state court decision either "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confronts a set of facts that are materially indistinguishable from a decision of [the United States Supreme] Court and nevertheless arrives at a result different" from the United States Supreme Court. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision involves an "unreasonable application" of Supreme Court case law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also id. at 409–11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous"). "[E]ven 'clear error' will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014) (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). "Rather, 'as a condition for

7

obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. at 419-20 (internal brackets omitted) (quoting Harrington v. Richter, 562 U.S. 82, 103 (2011)).  A summary disposition of a claim in state court is still entitled to § 2254's deferential review.  See Harrington, 562 U.S. at 100.  Finally, the factual findings of the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1).  The petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  Id.

Petitioner presented the substance of all of his claims to the state courts during his various attempts at relief.  It is also clear that the state courts heard and denied most of those claims on their merits.  Therefore, the Court will apply the deferential AEDPA standards just set out.  The Court also notes that as to certain claims, particularly claims 17 and 18, it is not entirely clear that the state courts addressed and denied them on their merits, but even if this Court does not apply the deferential AEDPA standard of review to those claims, the claims still fail and the outcome of the case is not affected.

<u>Discussion</u>

<u>Claims One Through Four</u>

Respondent argues as to Petitioner's first four claims for relief that the Court either does not have jurisdiction to consider the claims or that they are not cognizable on habeas review.

Turning to Petitioner's first two claims for relief, which are that Count Two of his indictment was defective and that the proof at trial varied from the indictment regarding his

8

drug paraphernalia conviction, Respondent argues that the Court lacks jurisdiction over these claims because Petitioner was not in custody on either Count Two of the indictment or the drug paraphernalia conviction at the time he filed his Petition. Petitioner generally asserts that the Court has jurisdiction over his claims, but does not explain that statement, expand on it, or support it with facts or argument. (Petitioner's Memorandum at 6.)

Under 28 U.S.C. §§ 2241(c)(3) and 2254(a) federal courts have jurisdiction to entertain applications for habeas corpus only if the petitioner is "in custody" at the time a habeas petition is filed. The custody requirement of § 2254 is not met when the prisoner is challenging an expired state sentence. See Maleng v. Cook, 490 U.S. 488, 492 (1989). If a petitioner is not in custody on the challenged conviction, the Court lacks subject matter jurisdiction in the case. Id. at 494.

Here, Petitioner's first claim for relief challenges Count Two of his indictment [Doc. #1-1, Ex. E.]. However, Petitioner was not convicted of that charge. Therefore, he was never in custody for a conviction on Count Two of his indictment, either at the time he filed his Petition or any other time. The Court does not have jurisdiction over his claim challenging Count Two. As for Petitioner's second claim, it challenges his conviction for possession of drug paraphernalia for which he received a sentence of 10 to 21 months of imprisonment to run concurrently with his conviction for trafficking heroin. Petitioner received the sentence on July 19, 2019. He filed his Petition on August 11, 2022, or more than 36 months later. Simple math dictates that his sentence on the drug paraphernalia conviction must have expired well prior to the filing of the Petition, and the records of the North Carolina Department of Public Safety confirm that fact. These records show that Petitioner's drug paraphernalia

9

conviction expired on July 10, 2020. Therefore, Petitioner was no longer in custody for the challenged conviction at the time he filed his Petition, and the Court also has no jurisdiction over his second claim. Mays v. Dinwiddie, 580 F.3d 1136, 1140-41 (10th Cir. 2009) (relying on Maleng, 490 U.S. at 492, and holding that a petitioner serving two concurrent sentences was not "in custody" under § 2254 for purposes of challenging the completed shorter sentence). Petitioner's first and second claims for relief should be dismissed for lack of jurisdiction.[1]

Petitioner's third claim for relief argues that the trial court violated his rights by introducing evidence against him under N.C. R. Evid. 404(b), which allows for the introduction of evidence of other crimes or wrongs for limited purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." The State proffered the video of Petitioner dealing heroin at a different time than alleged in the indictment, but very near to the location of 409 East End Avenue and using a distinctive dirt bike similar to one seen at that house, for the purpose of establishing his connection to the house and the dirt bike, his knowledge of drugs in the house, and his opportunity to use the house and bike for dealing. (Trial Tr. [Doc. #1-2] at 28-30.) As Respondent points out, contentions resting solely on alleged violations of state law are not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62 (1991); Weeks v. Angelone, 176 F.3d 249, 262 (4th Cir. 1999), aff'd, 528 U.S. 225 (2000). Further, "the admissibility of evidence, the sufficiency of evidence, and instructions to the jury in state trials

---

[1] Moreover, as noted in the Motion for Summary Judgment, these challenges regarding alleged defects in the state court indictments did not rise to the level of depriving Petitioner of the right to due process and would not form the basis for federal habeas relief in any event.

10

are matters of state law and procedure not involving federal constitutional issues. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960); accord Spencer v. Murray, 5 F.3d 758, 762 (4th Cir. 1993). Petitioner argues that the introduction of this evidence violated his right to a presumption of innocence because it made him look like a drug dealer. However, the presumption of innocence in no way means that the State cannot introduce evidence that makes a defendant appear to be guilty. In fact, the State's burden in a criminal trial is to present admissible evidence to establish the defendant's guilt. This is not fundamentally unfair or a violation of the presumption of innocence. Further, the trial court in this case specifically instructed the jury concerning limitations on its consideration of the evidence Petitioner now challenges. (Trial Tr. [Doc. #1-5] at 702.) Thus, the introduction and use of the evidence did not somehow violate Petitioner's rights. His third claim for relief should be denied.

Petitioner's fourth claim for relief seeks to contest the probable cause underlying the search warrant that led to the search of 409 East End Avenue. This Court cannot consider this claim on habeas review because the United States Supreme Court has ruled that habeas corpus relief is unavailable for challenges of this sort "where the State has provided an opportunity for full and fair litigation of [the] Fourth Amendment claim." Stone v. Powell, 428 U.S. 465, 482 (1976); see also Grimsley v. Dodson, 696 F.2d 303, 304 (4th Cir. 1982) (observing that Stone "marked, for most practical purposes, the end of federal court reconsideration of Fourth Amendment claims by way of habeas corpus petitions where the petitioner had an opportunity to litigate those claims in state court"). Here, Petitioner not

only had an opportunity to litigate the matter, he actually did so prior to his trial in a motion to suppress for which the trial court held a hearing before denying the motion. (Trial Tr. [Doc. #1-2] at 7-26.)[2] Therefore, Petitioner's fourth claim for relief should be denied.

<u>Claims Five Through Nineteen</u>

Petitioner's remaining claims all allege ineffective assistance of counsel by either his trial attorney or appellate attorney. In order to prove ineffective assistance of counsel generally, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he suffered prejudice as a result. See <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). With respect to the first prong of <u>Strickland</u>, the petitioner bears the burden of affirmatively showing deficient performance. See <u>Spencer v. Murray</u>, 18 F.3d 229, 233 (4th Cir. 1994). With respect to the second prong of <u>Strickland</u>, to establish prejudice, a petitioner must show the existence of a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have differed. <u>Strickland</u>, 466 U.S. at 694.

Petitioner's fifth claim (the first claim of ineffective assistance) alleges that his attorney improperly failed to request a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), in order to examine Deputy Grabarek concerning his role in conducting surveillance that helped lead to the warrant to search 409 East End Avenue. His sixth claim for relief similarly alleges that counsel should have subpoened Deputy Grabarek to be examined. Petitioner raised his

---

[2] Petitioner also raised this claim in the second MAR, which was denied on the merits, and even if considered, Petitioner cannot show that this determination was contrary to or an unreasonable application of federal law.

fifth claim on direct appeal and the North Carolina Court of Appeals addressed and denied the claim by stating in pertinent part:

> ¶ 27 Defendant asserts the lack of a <u>Franks</u> hearing prejudiced him because he "may have been able to make a showing that Grabarek lied about seeing [Defendant] leave the house, and that Valdivieso had reason to distrust Grabarek."

> ¶ 28 In <u>Franks v. Delaware</u>, the Supreme Court of the United States held that when a "defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause" a defendant may request a hearing. <u>Franks v. Delaware</u>, 438 U.S. 154, 155–56, 57 L. Ed. 2d 667, 672 (1978).

> ¶ 29 Defendant's assertion is misplaced. The mere potential of a different outcome is not enough to show Defendant was prejudiced by his counsel's failings. "The likelihood of a different result must be substantial, not just conceivable." <u>Harrington v. Richter</u>, 562 U.S. 86, 112, 178 L. Ed. 2d 624, 647 (2011).

> ¶ 30 No evidence in the record before this Court tends to show Defendant would be successful at a Franks hearing. Grabarek's statements or participation were not necessary to any finding of probable cause. Presuming arguendo, the affiant, Detective Valdivieso, did have reason to distrust Grabarek at the time of his involvement and included his statement recklessly, other ample evidence in the record exists to support the finding of probable cause necessary for the issuance of the warrant.

> ¶ 31 Sergeant Pinner had visited Defendant at the 409 East End Avenue address the previous day. Moreover, the CI had already identified Defendant's residence prior to the controlled purchase. These two elements clearly meet the "commonsense ... totality-of-the-circumstances approach" adopted by our Supreme Court for determining probable cause. <u>State v. McKinney</u>, 361 N.C. 53, 62, 637 S.E.2d 868, 874 (2006) (citing <u>Illinois v. Gates</u>, 462 U.S. 213, 230–31, 76 L. Ed. 2d 527, 543 (1983)).

> ¶ 32 Based on the record before us, a <u>Franks</u> hearing regarding Grabarek's involvement would have not been successful for Defendant. Defendant's failure to meet the <u>Franks</u> test does not show the substantial likelihood of a different result, even if his counsel had requested it. <u>Richter</u>, 562 U.S. at 112, 178 L. Ed.

2d at 647. Defendant cannot prove prejudice resulting from the purported IAC in the record before us under this theory.

Harris, 2021 WL 2794570, at *4-5.  Petitioner also raised both his fifth and sixth claims in his Second MAR to the state trial court.  That state court denied the entire Second MAR as being "without merit."  (Order [Doc. #13-24].)

As just set out, the North Carolina Court of Appeals applied the Strickland standard in evaluating Petitioner's claim of ineffective assistance of counsel, and also cited to United States Supreme Court case law in evaluating the potential Franks hearing and the finding of probable cause for the warrant using the totality of the circumstances.  Petitioner does not point to any error in that approach.  He also points to nothing to show that the North Carolina Court of Appeals engaged in an analysis contrary to or involving an unreasonable application of the cited law.  Petitioner continues to argue that, had his attorney brought Deputy Grabarek into court either through a Franks hearing or a subpoena, Grabarek might have said something helpful to the defense.  However, this is pure speculation on his part, and speculation is not enough for his claims to succeed in this Court.[3]  For all of these reasons, Petitioner has failed to establish that the reasoning and conclusion of the North Carolina Court of Appeals as to the fifth claim, and of the Second MAR court as to the fifth and sixth claims, was contrary to

---

[3] Moreover, the basic facts related to Deputy Grabarek's criminal activity are in the record of Grabarek's criminal case in this Court, 1:19CR2-1.  The Factual Basis [1:19CR2-1, Doc. #4] in that case reveals that he had a drug addiction, that he used marijuana to ease his Post-Traumatic Stress Disorder, that he stole money from a federal program used to finance undercover drug buys by documenting buys that did not occur, and that he stole narcotics from the buys.  There is no mention of Deputy Garbarek ever falsely implicating the target of a controlled buy and there is nothing in the record that would suggest that type of misconduct.  Falsely implicating Petitioner as leaving from 409 East End Avenue for a controlled buy conducted by other officers would not have helped Deputy Grabarek with his scheme to obtain drugs or money and would not have been consistent with his misconduct on other occasions.  Therefore, nothing in his course of criminal activity suggests that his testimony would have been the least bit helpful to Petitioner, much less that it would have produced a likelihood of a different outcome.

14

or involved an unreasonable application of Federal law or was based on an unreasonable determination of the facts. Petitioner's fifth and sixth claims for relief should be denied.

Petitioner's seventh claim for relief asserts that trial counsel provided ineffective assistance because counsel did not challenge Count Two of the indictment for failing to properly classify the controlled substance, as alleged by Petitioner in his first claim for relief. However, as discussed above, Petitioner was not convicted on that Count. Therefore, he is not in custody for that charge, and this Court does not have jurisdiction over claims attacking that charge.[4] Petitioner's seventh claim for relief should therefore be dismissed.

Petitioner's eighth claim for relief notes that the trial judge, during a recess, notified the parties that a juror was falling asleep and that if she observed that again, she would seek input from the parties as to what action to take. (Trial Tr. [Doc. #1-4] at 354-55.) Neither the prosecutor nor Petitioner's attorney made any comment. Petitioner now contends that his attorney provided ineffective assistance because he did not replace the juror with an alternate juror and that this somehow deprived him of his right to an impartial jury. Petitioner raised this claim in his Second MAR, which was summarily denied. That decision is not contrary to or an unreasonable application of Strickland. Nothing in the record establishes the duration of the juror falling asleep or what testimony was missed. It was enough to cause the trial judge to take notice, but not enough for her to take any action or even propose to the parties that she should or would take any action at that point. She stated that she would ask for their input if it happened again, but did not invite any input at that time. Petitioner's

---

[4] Further, even if this Court did have jurisdiction over this claim, Petitioner has not met the standards of Strickland because he cannot show prejudice given the lack of conviction on this count. He also cannot show that any state court decision denying this claim was contrary to or involved an unreasonable application of Federal law or was based on an unreasonable determination of the facts.

attorney could not simply replace the juror as Petitioner suggests. Instead, he could have asked that the juror be replaced. However, given that the judge did not consider the matter serious enough to act or to even ask the parties for their opinions, it is not likely that she would have granted a request that would have been contrary to her already stated intention. Finally, it is also not clear that replacing the juror, even if that occurred, would have created any likelihood of a different outcome in the verdict. Petitioner's contention that the juror's single episode of falling asleep somehow removed his impartiality is purely speculative. In the end, Petitioner cannot establish a likelihood of a different outcome even if his attorney had attempted to remove the juror in question. The state court's decision on this claim was not contrary to or an unreasonable application of Strickland, and Petitioner's eighth claim for relief should be denied.

Petitioner's ninth claim quickly fails because it alleges ineffective assistance of counsel due to Petitioner's attorney not objecting to the variance between the types of drug paraphernalia listed in County Seven of his indictment and the types shown to the jury at trial. This claim is another attack on the drug paraphernalia conviction. As discussed above, Petitioner was convicted of the count involved in this claim but served his entire concurrent sentence for that conviction before filing his Petition in this Court. Therefore, he was not in custody for that conviction under Malang at the time he filed the Petition and this Court does not have jurisdiction over claims attacking it. The claim should be dismissed.

Petitioner next contends in his tenth claim for relief that he wished to testify at trial but that his attorney provided ineffective assistance by preventing him from doing so. He claims that he sought to testify, that he and his attorney discussed the possibility, that his attorney

16

said it was okay for him to do so, and that his attorney showed him a witness list with Petitioner's name on it, but that his attorney then prevented Petitioner from testifying. Petitioner also raised this claim in his Second MAR. In neither that filing nor his Petition is Petitioner clear as to how his attorney prevented him from testifying beyond not calling him as a witness. Petitioner does not state that he and his attorney discussed the matter during trial, that Petitioner tried to convince his attorney to let him testify, or that he expressed this desire in court. Petitioner's claim is almost entirely conclusory, particularly as to prejudice. As Respondent points out, Petitioner utterly fails to explain the nature of his proposed testimony or how it would have created a likelihood of a different outcome at trial in light of the other evidence presented. Given that Petitioner presented no evidence of prejudice to the state court, the state court decision to deny the second MAR was not contrary to or an unreasonable application of <u>Strickland</u>. Petitioner's tenth claim fails and should be denied.

Petitioner's eleventh claim for relief contends that his attorney was ineffective for failing to object to, or request a jury instruction related to, alleged hearsay testimony by Sergeant Justin Ellerbe of the Durham County Sheriff's Department during the State's rebuttal case. Sergeant Ellerbe testified that he worked at the Durham County Jail and that at about 8:30 in the morning on October 4, 2018, he facilitated a visit between Michael Leverett and his son, Michael Mercer. (Trial Tr. [Doc. #1-5] at 619-20.) Ellerbe testified that he heard Leverett say to Mercer, "I am going to take Dave's charges. I have got fed time. Once you have fed time, the State can't do anything with you." (<u>Id.</u> at 620.) Leverett did testify at Petitioner's trial that he alone lived at 409 East End Avenue, that he rented it from Petitioner, and that all of the drugs and drug paraphernalia located by the authorities in the house

17

belonged to him and not Petitioner.  (Id. at 556-59, 573-76.)  Petitioner raised this claim in his Second MAR, which was denied on the merits.

In the Petition, Petitioner contends that his attorney should have objected to Ellerbe's testimony as hearsay or presented his own rebuttal evidence and that counsel should have objected to the jury instructions regarding this testimony.  (Petition at 50-51.)  However, North Carolina Rule of Evidence 803(3) allows for the admission of a statement that is otherwise hearsay even where the declarant is available as a witness where the testimony is "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)."  Such statements are allowable even where admitted for the purpose of proving subsequent conduct in accordance with the intent expressed in the statement as long as there has not been such a passage of time as to make the statement irrelevant.  State v. McElrath, 322 N.C. 1, 19, 366 S.E.2d 442, 452 (1988).  Here, Leverett expressed his intent in the months prior to trial and then allegedly acted in accordance with that intent at trial.  For this reason, Petitioner cannot show that any objection would have been sustained.  It is also unclear what limiting instruction counsel could have requested given that the statement was admissible to show that Leverett acted in accordance with his expressed intent or plan.  Finally, even absent the challenged statement from Ellerbe, there were significant issues with Leverett's testimony that he alone lived at 409 East End Avenue and that the drugs and drug paraphernalia in the house were all his and not Petitioner's.  Not the least of those issues were Petitioner's own statement to law enforcement that he (Petitioner) lived at the house and was the only person that lived there.  (Trial Tr. [Doc. #1-4] at 313-14, 335.) As mentioned by the North Carolina Court of Appeals, this statement

was supported by law enforcement observations of Petitioner leaving the house for drug deals and by the presence of a credit card and medical bill with his name on them in the house. Leverett claimed that he found the credit card in a drawer and used it to cut or mix drugs. However, he claimed not to have seen the medical bill which was lying in plain view on the dresser of the only bedroom in the home he claimed to have occupied for months. (Trial Tr. [Doc. #1-4] at 345-456; Trial Tr. [Doc. #1-5] at 574.) Even more problematic was the fact that Petitioner deposited a significant amount of money into Leverett's prisoner trust account using a series of fake names and that Leverett, after calling more than 70 times using his own jail calling card, called Petitioner using another inmate's card immediately after Petitioner's attorney visited Leverett before trial to tell Leverett that authorities knew of the deposits. (Trial Tr. [Doc. #1-5] at 636-44.)

In the end, the testimony that Petitioner argues his attorney should have challenged with an objection was admissible, Petitioner does not point to any appropriate jury instruction his attorney could have requested, and any rebuttal testimony by Leverett could not have adequately explained the statement in light of the other evidence in the case. Petitioner's attorney did not perform deficiently as Petitioner suggests. Further, counsel also could not have prejudiced Petitioner based on the circumstances just set out. Thus, the state trial court did not rule contrary to or engage in an unreasonable application of Strickland when it denied Petitioner's Second MAR on its merits. Petitioner's eleventh claim for relief should be denied.

Petitioner's twelfth claim for relief faults his attorney for not objecting when the prosecutor accused Petitioner's counsel of telling Leverett what to say during his testimony. Petitioner also claims that his attorney should have objected to "misconduct" by the

19

prosecutor during closing argument when the prosecutor argued that Leverett was a "fall guy" and that Petitioner paid him. Petitioner raised this claim in his Second MAR.

Turning first to the statements in the closing arguments, the statements do not constitute any sort of misconduct by the prosecutor. The prosecutor explained that a "fall guy" is someone who takes the punishment for a crime someone else committed. (Trial Tr. [Doc. #1-5] at 683.) He then went on to point to evidence in the record that indicated that Leverett was indeed attempting to take the blame for Petitioner's crimes. (Id.) This is not improper as the evidence was in the record and the jury could use it to conclude that Leverett was doing just that and that Petitioner paid him for it. This is not the only conclusion that the jury could have reached, but it was one possible conclusion supported by the evidence, and the prosecutor could make that argument to the jury.

As for the contention that the prosecutor stated in court that Petitioner's attorney told Leverett what to say and that the defense counsel did not object as he should have, this claim is not supported by the transcript in the case. Petitioner appears to acknowledge this and supplies an affidavit from someone in the courtroom who states that he heard the remark. (Petition, Attach. [Doc. #1-1], Ex. O.] Petitioner also raised this claim in his Second MAR. However, Petitioner's contentions are not sufficient to undermine the presumption of the regularity of the transcript. See Norris v. Schotten, 146 F.3d 314, 333 (6th Cir. 1998). Moreover, even assuming for the purposes of this case that the remark was made, but not transcribed by the court reporter, the claim still cannot succeed because Petitioner cannot show prejudice. The alleged remark calls Leverett's credibility into question. However, as discussed above, there were already a multitude of serious credibility issues with that testimony

which could lead a jury not to believe him. A stray remark or accusation by the prosecutor which defense counsel let pass without objection was cumulative at best and there is no likelihood that it affected the outcome of the case. The state trial court's denial of the claim in the second MAR is not contrary to or an unreasonable application of federal law or an unreasonable determination of the facts. Therefore, this twelfth claim for relief should be denied.

Petitioner's next four claims all involve allegations of ineffective assistance of counsel during his direct appeal. The standards found in <u>Strickland</u> also apply to claims that appellate counsel provided ineffective assistance of counsel. See <u>Lawrence v. Branker</u>, 517 F.3d 700, 708-09 (4th Cir. 2008). Further, appellate counsel need not raise on appeal every non-frivolous issue requested by a defendant. <u>Jones v. Barnes</u>, 463 U.S. 745, 750-54 (1983); <u>see also</u> <u>Evans v. Thompson</u>, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound strategy when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal"). Winnowing out weaker arguments to press forward with more important points constitutes an important part of effective appellate advocacy. <u>Jones</u>, 463 U.S. at 751-52. Prejudice can arise if "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994).

Here, Petitioner's thirteenth claim for relief alleges that appellate counsel was ineffective for failing to challenge the allegedly defective indictment and for failing to challenge the alleged variance between the indictment and the proof at trial. This claim is simply another framing of Petitioner's earlier claims related to Count Two of his indictment, on which he was

21

not convicted, and his drug paraphernalia conviction, for which he completed his sentence prior to filing this Petition. For the reasons discussed earlier, the Court does not have jurisdiction over claims raising these challenges. Petitioner's thirteenth claim for relief should be dismissed accordingly.

Petitioner's fourteenth claim asserts that he received ineffective assistance on appeal because his attorney did not raise an insufficiency of the evidence argument. Petitioner raised this argument in his Second MAR. In order to succeed on such a claim, his attorney would have had to successfully argue that there was not "'substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense.'" State v. Royster, 373 N.C. 157, 161-62, 834 S.E.2d 388, 391 (2019) (quoting State v. Powell, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). As set out by the North Carolina Court of Appeals on direct review, there is plentiful evidence that Petitioner lived at 409 East End Avenue and that he used that property to deal drugs as alleged in the indictment in his case. Raising an insufficiency challenge on appeal would have been fruitless at best, if not frivolous. Therefore, his attorney did not perform deficiently or prejudice Petitioner by failing to raise a fruitless claim, and the trial court's decision to deny this claim in Petitioner's Second MAR is not contrary to or an unreasonable application of federal law or based on an unreasonable determination of the facts. This claim should be denied.

Petitioner's fifteenth claim for relief, which he presented in his Second MAR, is that his appellate attorney failed to properly represent him because counsel did not raise a claim concerning the admission of evidence against Petitioner under N.C. R. Evid. 404(b). That

22

Rule states that evidence of crimes or wrongs other than the ones charged cannot be admitted to prove the character of a person but can be admitted "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." In Petitioner's case, the two pieces of evidence he claims should have been challenged consisted of (1) text messages sent to and from Petitioner's telephone between December of 2016 and February of 2017, a time period prior to the events at the heart of Petitioner's charges, which tended to show that he sold heroin and cocaine and that he had access to 409 East End Avenue and (2) testimony from officers who witnessed Petitioner dealing heroin to three separate confidential informants a few hundred yards from 409 East End Avenue in March and April of 2018. In one sale, he used a yellow dirt bike. A yellow dirt bike had been seen parked at 409 East End Avenue. The State also played a video of the sales. Petitioner's trial counsel objected to the evidence, but the State proffered it under Rule 404(b) for the purposes of demonstrating Petitioner's connection to the house and the dirt bike, knowledge of drugs in 409 East End Avenue, and his opportunity to access that house and use items in it. (Trial Tr. [Doc. #1-2] at 28-36.) The trial court allowed it to be presented, but gave a limiting instruction to the jury. (Trial Tr. [Doc. #1-5] at 702.)

In order to succeed on appeal, Petitioner's counsel would have needed to demonstrate not only that the evidence admitted did not fall within the purview of Rule 404(b) in that it was admitted only to show Petitioner's disposition to commit the crimes charged, but also that it prejudiced him by creating a reasonable possibility that there would have been a different result at trial. State v. Pabon, 380 N.C. 241, 258-60, 867 S.E.2d 632, 643-45 (2022). Here, the evidence was admitted to tie Petitioner to 409 East End Avenue and to show his opportunity

23

to use the residence to store drugs to facilitate his drug dealing. Therefore, it appears properly admissible under Rule 404(b). Even if this were not the case, other significant evidence tying Petitioner to that house was still present, and Leverett's testimony taking responsibility for the drugs was severely undermined for reasons discussed above. Therefore, the potential argument on appeal would not have been a strong one. At the very least, the trial court on the second MAR could have reasonably found under <u>Strickland</u> that counsel did not perform deficiently in not raising the argument and/or that he did not prejudice Petitioner. For this reason, the trial court's decision to deny this claim in Petitioner's Second MAR is not contrary to or an unreasonable application of federal law or based on an unreasonable determination of the facts. This claim should be denied.

Petitioner's sixteenth claim for relief is that his appellate attorney failed to raise any claim related to prosecutorial misconduct. Petitioner does not elaborate in his Petition, but in his Second MAR, he identified several alleged instances of "misconduct." The first allegedly occurred in a pretrial hearing where the prosecutor told the trial judge he would put on testimony from certain witnesses but then did not. It is not clear how the prosecutor making a different decision than one stated at a pretrial conference out of the presence of the jury possibly constituted misconduct, much less prejudiced Petitioner or created any claim for an appeal. Petitioner next points to a statement by the prosecutor in his opening statement that a deputy would testify that she called Petitioner and told him that law enforcement was about to serve a warrant on 409 East End Avenue and that Petitioner replied that he was "ten minutes away" and would "be home soon." (Trial Tr. [Doc. #1-3] at 283.) She later actually testified that she called Petitioner's phone, that he did not answer, that he called her back, and

that he stated that he was "ten minutes away and he would be there." (Trial Tr. [Doc. #1-4] at 432.) The difference between the deputy calling Petitioner versus her calling him and then him calling back is utterly irrelevant. As for the prosecutor's statement about Petitioner saying he would be "home," this constitutes a failure by the State to produce the evidence it forecast in its opening statement. It is not clear how a failure to provide promised evidence harmed Petitioner or constituted misconduct that could support a viable claim on appeal. Similarly, Petitioner takes issue with opening statements by the prosecutor that the jury would see evidence that Petitioner repeatedly called authorities to 409 East End Avenue and that he dealt heroin and fentanyl near the property. However, Petitioner alleges that the actual testimony at trial did not establish that he made multiple calls to authorities to come to the house or that he dealt fentanyl, as opposed to heroin. Again, it is not clear how promising evidence and then failing to deliver helped the State or harmed Petitioner so that he had a viable claim for appeal.

Petitioner next points to the alleged statement by the prosecutor that Petitioner's attorney told Leverett what to say at trial. Any claim based on this allegation would fail for the reasons set out previously in connection with Petitioner's twelfth claim for relief. The remainder of Petitioner's allegations concern the prosecutor's closing argument and are contentions that there were minor differences between the evidence at trial and the prosecutor's arguments or that the prosecutor gave his opinion concerning what the evidence showed. Minor discrepancies do not create grounds for an appeal. As for the "opinions," the statements highlighted by Petitioner are nothing more than the prosecutor's view of the inferences the jury should draw from the evidence presented. As such, they are appropriate

25

closing arguments, not any form of misconduct. They could, therefore, not support any viable ground for appeal. In the end, it is clear Petitioner's appellate attorney had no grounds to raise a claim based on prosecutorial misconduct. Therefore, he did not perform deficiently or prejudice Petitioner by not raising this claim, the state court denial of the claim in Petitioner's Second MAR is not contrary to or an unreasonable application of federal law or based on an unreasonable determination of the facts, and the Court should deny Petitioner's sixteenth claim for relief.

Petitioner's seventeenth claim argues that trial counsel provided ineffective assistance of counsel because trial counsel did not object to the State's removal of a juror due to his religion. Petitioner presented this claim in a Motion to Amend his Second MAR. It is not clear from the record whether or not the trial court granted that Motion or considered the claim. Therefore, although Petitioner presented the claim to the state courts, it is not clear whether they decided the claim on the merits so that the AEDPA standards of review apply. Nevertheless, the outcome is the same either way. During voir dire, the prosecutor asked a prospective juror about his prior indication that he was a Jehovah's Witness. (Trial Tr. [Doc. #1-2] at 81.) The juror stated that as a Jehovah's Witness he did not believe in standing in judgment of other people because God would judge everyone. (Id.) He stated that he believed this strongly, that he had held the belief for 30 years, and that he would not be able to follow the law if instructed concerning reasonable doubt and drug crimes. (Id. at 82.) He said that he did not have a problem with the law, but that he would follow God's laws. (Id.) The State then moved to remove the juror for cause, the defense did not object, and the trial judge excused the juror. (Id. at 82-83.)

The record is abundantly clear that the juror in question would not follow the law as set out in the jury instructions in a criminal case. He was removed for this reason, not because of his religion. Jurors must be impartial and be able to make decisions based on the facts of the case and the law as instructed by the judge. Morgan v. Illinois, 504 U.S. 719, 726-29 (1992) (discussing juror impartiality generally). It is not clear how defense counsel could possibly have raised an objection, much less a meritorious one. This means that trial counsel did not perform deficiently by not objecting and that Petitioner suffered no prejudice. The claim does not satisfy either prong of Strickland and should be denied.

Petitioner's eighteenth claim for relief was also raised in the Motion to Amend his Second MAR. In that claim, Petitioner asserts that his attorney provided ineffective assistance of counsel by failing to call Petitioner's former attorney as a witness at trial. Petitioner sets out the nature of that testimony in his Motion to Amend his Second MAR. He does not fully recount it in his Petition, but the Petition references the earlier claim. However, the testimony proposed by Petitioner would have involved his former attorney testifying that Leverett came to him and took responsibility for the drugs related to Petitioner's charges and did not state that Petitioner slept at 409 East End Avenue. (Motion to Amend Second MAR at 9-11.) Leverett unquestionably took responsibility for the drugs in the house. The issue at trial was whether or not Leverett was credible in taking responsibility. The fact that he told his story to two defense attorneys instead of one would have been at most marginal in bolstering Leverett's credibility, particularly in light of the previously discussed evidence which discredited him. As for whether or not Leverett told Petitioner's former counsel that Petitioner slept in the house, Petitioner produces no evidence as to what his testimony would

27

have been in that regard. Petitioner's trial attorney did not perform deficiently or prejudice Petitioner by failing to call Petitioner's former attorney as a witness. This claim does not satisfy the Strickland standard and should be denied.

Petitioner's nineteenth, and final, claim is that his attorney provided ineffective assistance of counsel by failing to raise an argument that police violated Petitioner's rights during the search of 409 East End Avenue when they placed him in handcuffs and asked him about the presence of other persons in the house that officers were about to enter without first informing him of his rights as required by Miranda v. Arizona, 384 U.S. 436 (1966). Petitioner's answers allowed an officer to testify at trial that Petitioner said that he was the only person living in the house. Petitioner raised this claim to the state trial court in his Supplemental MAR, which it denied without discussion (see Order [Doc. #13-26]).

As the United States Court of Appeals for the Fourth Circuit has explained:

> The Fifth Amendment provides that "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. As a prophylactic safeguard for this constitutional guarantee, the Supreme Court has required law enforcement to inform individuals who are in custody of their Fifth Amendment rights prior to interrogation. See Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); United States v. Parker, 262 F.3d 415, 419 (4th Cir.2001). Without a Miranda warning, evidence obtained from the interrogation is generally inadmissible. See id.; see also United States v. Hargrove, 625 F.3d 170, 177 (4th Cir. 2010).

United States v. Hashime, 734 F.3d 278, 282 (4th Cir. 2013). There are, however, exceptions to the exclusionary rule of Miranda, and one of those exceptions is a "public safety" exception which applies to both the public generally and to police officers. United States v. Mobley, 40 F.3d 688, 692 (4th Cir. 1994). That exception allows the admission of information elicited by custodial police questioning even without a Miranda warning where "there is 'an objectively

reasonable need to protect the police or the public from any immediate danger.'" Id. at 693.
"Absent such circumstances posing an objective danger to the public or police, the need for
the exception is not apparent, and the suspicion that the questioner is on a fishing expedition
outweighs the belief that public safety motivated the questioning that all understand is
otherwise improper." Id.

Here, according to the testimony at Petitioner's trial, officers intended to conduct a
search of 409 East End Avenue, where they believed Petitioner lived, pursuant to a search
warrant. They were aware that there were pit bulls in the residence, but they did not know
how many. (Trial Tr. [Doc. #1-3] at 310-11.) They also knew from prior experiences that pit
bulls can create a safety issue for officers. (Id. at 311.) They intended to get Petitioner out of
the house before entering it, but he was not there when they arrived. (Id. at 310.) This resulted
in the telephone calls Petitioner discussed earlier. (Id. at 311.) When Petitioner arrived at the
residence, police immediately handcuffed him. (Id. at 312.) The State does not appear to
argue that he was not in police custody for purposes of Miranda at that point, but there is no
evidence that officers informed Petitioner of his rights. Officers noted dogs on the porch in
crates, but also an "extremely aggressive" dog with its head out a window on the left side of
the house. (Id. at 312-13.) Animal control officers were on hand and prepared to enter with
an officer safety team, but they did not know how many dogs were in the house. (Trial Tr.
[Doc. #1-4] at 313.) Therefore, one officer on the scene, Lieutenant Pinner, ordered another
officer, Detective Valdivieso, to ask Petitioner safety questions such as whether there were
other people in the house, how many dogs were there, and whether there was anything in the
house that might harm officers. (Id.) Detective Valdivieso testified that he then asked

29

Petitioner whether there was anyone else in the house, to which Petitioner replied that he was the only one that lived there. (Id. at 335.) Officers then secured the dogs, entered the house, and proceeded with the search as planned.

Viewing the totality of the circumstances, the officers on the scene faced a somewhat chaotic and dangerous situation with aggressive and potentially dangerous pit bulls, at least one of which was loose in the house and barking at them out of a window. Officers therefore knew that at least one dangerous dog was loose in the house, and they did not know who or what else might be in the house. The presence of the aggressive dog would have served to increase any potential danger to officers from individuals in the house who might seek to harm them. Therefore, it was objectively reasonable to protect officer safety for them to ask Petitioner, who they already believed lived there, whether other persons were in the house before they entered. In response, Petitioner volunteered that he lived there and was the only person that lived there. Based on these facts, it is clear that Officer Valdivieso acted in an objectively reasonable manner in asking his question in order to protect officer safety and was not engaging in an unconstitutional fishing expedition or interrogation. Petitioner's answer was properly admissible, which means that trial counsel did not perform deficiently in failing to seek its exclusion and did not prejudice Petitioner in not raising a plainly futile argument. Likewise, the state court did not act contrary to or engage in an unreasonable interpretation of Strickland or an unreasonable determination of the facts by denying Petitioner's Supplemental MAR. This Court should deny Petitioner's nineteenth claim for relief as well.

Because all of Petitioner's claims for relief fail, the Court will not hold an evidentiary hearing in this matter, Respondent's Motion for Summary Judgment should be granted, the cognizable claims in the Petition should be denied, and the action should be dismissed.

IT IS THEREFORE RECOMMENDED that Respondent's Motion for Summary Judgment [Doc. #38] be granted, that the Petition [Doc. #1] be dismissed as to Claims 1, 2, 7, 9, and 13, and denied as to the remaining claims as set out above, that this action be dismissed, and that, there being no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction nor a debatable procedural ruling, a certificate of appealability not issue.

This, the 5th day of August, 2024.

Joi Elizabeth Peake
United States Magistrate Judge